IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SHOPIFY INC.**, a Corporation organized under the laws of Canada,<br><br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>**ZACHARY LOTZ** (a.k.a. Lao Ganma, a.k.a. Sam Hill), an individual,<br><br>　　　　　　Defendant. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT - 17 U.S.C. § 512(f)**<br><br>**PERMANENT INJUNCTIVE RELIEF REQUESTED**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Shopify Inc. ("Shopify") hereby alleges for its Complaint against Defendant Zachary Lotz (a.k.a. Lao Ganma, a.k.a. Sam Hill) on personal knowledge as to its own actions and on information and belief as to the activities of others, as follows:

## NATURE OF ACTION

1.　Defendant Lotz has repeatedly harassed, and continues to harass, Shopify merchants and Shopify itself through knowingly false allegations of copyright infringement. This lawsuit seeks to halt that misconduct and hold him accountable for the damage he has caused.

2.　In 1998, Congress enacted the Digital Millennium Copyright Act, 17 U.S.C. § 512 (the "DMCA"), to provide a framework for addressing claims of online copyright infringement. In general, the DMCA immunizes online service providers from claims of copyright infringement based on materials uploaded to the services by users, if the services promptly remove allegedly infringing materials upon receipt of "takedown notices" from

1

copyright holders.  Through these notices, the content of which is statutorily prescribed, copyright holders are able to secure the prompt removal of allegedly infringing materials from online services without the need to prove a claim of infringement in court.  Indeed, where a takedown notice meets the statutory requirements, a service provider <u>must</u> expeditiously remove alleged infringing content in order to claim the DMCA's immunity.  Service providers thus have strong incentives to promptly remove content identified in facially valid takedown notices.  Users that receive takedown notices that the user contends are incorrect may file a prescribed counter notification and have the disputed content restored, but only after a two-week waiting period.

3. The DMCA's notice and counter-notice approach, and in particular the statute's mandate of expeditious removal and delayed restoration of content, has made the statute ripe for abuse.  Malicious actors, like Lotz, can send takedown notices making bogus claims of infringement and thereby secure the removal (at least temporarily) of content to which they object or content with which they compete.

4. Congress was aware that takedown notices could be abused to secure the removal of perfectly legitimate content.  Accordingly, it included a provision in the DMCA authorizing those aggrieved by false notices to bring an action against the sender for damages.  This is such an action.

5. Defendant Lotz has sent Shopify at least nine DMCA takedown notices littered with misrepresentations, claiming that materials Shopify merchants have posted to their online stores supposedly infringe his copyright.  But Lotz does not actually own any of the copyrights to which he claims ownership in these notices.  Indeed, much, if not all, of the information Lotz

has supplied in the notices are false, and Lotz has submitted them to Shopify as part of a scheme to harm competing Shopify merchants and Shopify itself.

## PARTIES

6. Plaintiff Shopify is a corporation organized under the laws of Canada, with its headquarters in Ottawa, Ontario, Canada.  Shopify is a cloud-based, e-commerce platform enabling all manner of merchants to operate and promote their businesses online.

7. Defendant Zachary Lotz is an individual who has referred to himself as Lao Ganma and Sam Hill in takedown notices that he sent to Shopify.  Lotz resides in Cheektowaga, New York.

## JURISDICTION AND VENUE

8. The Court has original and exclusive jurisdiction for this matter under 28 U.S.C. § 1338.  This is a civil action arising under an Act of Congress governing copyrights, specifically under 17 U.S.C. § 512(f) of the Copyright Act.

9. The Court has personal jurisdiction over Lotz, a resident of New York.

10. Venue in this judicial district is proper under 28 U.S.C. § 1400(a).  This is the district in which Defendant Lotz resides or may be found.

## BACKGROUND

### Shopify and its DMCA Processes

11. Shopify is a provider of online services.  It offers a platform to millions of merchants through which the merchants can operate online stores.  Merchants upload content for those stores to Shopify's network.  Shopify hosts that content and makes it available to the online world.  Shopify is thus a "service provider" as defined by the DMCA.

12. In accordance with the DMCA, Shopify has registered an agent with the United States Copyright Office to receive notices of alleged infringement from copyright holders.

13. If a copyright holder believes that a merchant has uploaded to the Shopify platform content that infringes their copyright, he may invoke the DMCA's procedures by sending a takedown notice to Shopify's registered agent detailing the alleged infringement. To facilitate the submission of takedown notices, Shopify allows any copyright holder with a Shopify account to access a form on the Shopify website at https://help.shopify.com/en/legal/dmca#/login, where they can easily input the information the DMCA requires for a valid takedown notice (17 U.S.C. § 512(c)(3)(A)):

(i) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted;

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

(iii) Identification of the material that is claimed to be infringing and information reasonably sufficient to permit the service provider to locate the material;

(iv) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;

    (v)  A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; and

    (vi)  A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

  14.  As the host of millions of online storefronts from merchants all over the world, Shopify receives thousands of DMCA takedown notices each month.  Shopify invests heavily in engineering, customer support, and computer systems to process these notices.  In the vast majority of cases, when Shopify receives a notice that substantially complies with the requirements for a DMCA takedown notice, it promptly disables access to the allegedly infringing material.  For Shopify merchants, that may mean that they can no longer sell allegedly infringing products through their stores, or use allegedly infringing content to promote sales.

  15.  If a Shopify merchant disputes a takedown notice, it can object through submission of a counter notification to Shopify's DMCA agent.  But under the DMCA, that does not cause the immediate restoration of the disputed content.  Rather, to obtain the DMCA's protections, Shopify must typically wait two weeks following receipt of a counter notification before permitting the content to return to the platform.  In the interim, the disputed takedown notice can deprive the Shopify merchant of the ability to sell products or use content.

  16.  Under certain circumstances, a takedown notice can even result in the complete termination of a merchant's online store.  Like all DMCA service providers, Shopify is required to implement a policy under which those who are "Repeat Infringers" lose access to the platform.  Under Shopify's policy, a takedown notice results in a "strike," and an accumulation of strikes over time results in termination.  A merchant that receives a takedown notice may submit a

counter notice and lift the strike.  But for unsuspecting merchants who may be unfamiliar with the DMCA, a sudden onslaught of takedown notices can result in the termination of their entire store under Shopify's repeat infringer policy.

### Abuse of the DMCA Takedown Process

17. The DMCA recognizes that online service providers lack the resources, information, and authority to adjudicate competing rights claims.  Even if it were possible for online service providers to decide which claims are valid, the sheer volume of notices makes investigation of each one practically impossible.  As is common among service providers, Shopify relies on a mix of both human and automated review of notices, and it relies on the DMCA's prohibition on misrepresentation in takedown notices to limit abuse.

18. Unfortunately, unscrupulous individuals are increasingly seeking to exploit the DMCA takedown process for anti-competitive purposes or reasons of animus.  These individuals know that service providers that comply with the law, like Shopify, promptly remove allegedly infringing content in response to DMCA takedown notices, that they assess strikes to the alleged infringers, and that they terminate the accounts of users who accumulate strikes.  With that knowledge, these individuals send seemingly valid, but bogus takedown notices causing the removal of legitimate products and sometimes the termination of entire stores.  While Shopify works to prevent this sort of abuse, and it promptly honors valid counter notices, it may be unable to prevent real harm to merchants in the face of determined attacks.

### Defendant Lotz's Illegal Behavior

19. Defendant Lotz sent a host of fraudulent takedown notices to Shopify, targeting the stores of Shopify merchants who compete with his own Shopify store called ISJ (isupportjapan.com).  Lotz's store sells anime-inspired clothing.  In his takedown notices, Lotz

claimed that dozens of competitors' product listings for anime clothing supposedly infringed his supposed copyrights.  But Lotz's notices were not intended to address actual infringement of copyrights he actually owns.  Instead, Lotz weaponized the DMCA takedown process to cause Shopify to remove other merchants' rival products from the platform.   To make matters worse, Lotz perpetrated this scheme during the busiest shopping week of the year in an effort to cause the greatest amount of harm to other businesses, and reap for himself the greatest advantage.

20. Lotz started by employing fake identities to create Shopify accounts.  On November 22, 2023, Lotz created a Shopify account claiming that his name was Lao Ganma.  He provided Shopify with an email address: metalarctic01@aol.com.  On November 24, 2023, Lotz created another Shopify account claiming to be someone named Sam Hill.  To set up that account, he provided Shopify with a different email address: clanlegion.webs@gmail.com.  Lotz confirmed that he actually controlled the email addresses he supplied to Shopify by responding to email inquiries that Shopify sent to both.

21. After creating these Shopify accounts, Lotz accessed the Shopify webform and used it to submit DMCA takedown notices to Shopify, attesting that materials posted by merchants to Shopify's platform violated his copyrights.

22. Lotz's takedown notices to Shopify satisfied each of the DMCA's requirements for such notices.  He provided a name.  He provided links to copyrighted works that he supposedly owned and links for  allegedly infringing materials.  He professed a good faith belief that the allegedly infringing materials were unauthorized, swore under penalty of perjury that he was the copyright owner (or was authorized to act on the owner's behalf), and attested that all information was accurate.

23. But Lotz's takedown notices were rife with misrepresentations. In many of them, Lotz falsely claimed to be a person named Lao Ganma. Lotz falsely claimed copyright ownership over anime-inspired clothing displayed on a store called "Kujo" (kujowares.com). Lotz falsely claimed that Shopify merchants, including ANIQI (aniqistudios.com), Pomel (pomelclothing.com), and TRZN (trznstudios.com) infringed Kujo's copyrights by selling clothing that also bore anime figures. Lotz falsely claimed, under penalty of perjury, that he was authorized to act on Kujo's behalf and falsely represented that the information in these notices was accurate.

24. Lotz does not work for Kujo, was not authorized to act on behalf of Kujo and does not own copyright in the content on Kujo's online store.

25. Lotz also sent bogus takedown notices falsely claiming to be Sam Hill. He falsely claimed copyright over content displayed on an online store called "Hokuro" (hokuroclothing.com) that sells anime clothing. And he falsely accused a Shopify merchant TRZN (trznstudios.com) of infringing those copyrights.

26. The fraudulent nature of Lotz's takedown notices was also manifest in the addresses he supplied. In some notices sent through his Lao Ganma account, he claimed to reside at 713 Butternut Drive, Parkesburg, Alabama 19365. There is no such place. In the notices sent through his Sam Hill account, he claimed to reside at 21 e la st, Los Angeles, California 90005. That too does not appear to exist.

27. On November 28, 2023, one of the targeted merchants contacted Shopify and informed it of Lotz's misconduct. Through an investigation, Shopify determined that Lotz was the real person responsible for sending the false takedown notices through the "Lao Ganma" and "Sam Hill" accounts.

Harm from the Fraudulent Schemes

28. While Lotz knew the assertions in his takedown notices were false when he made them, Shopify did not. Before it learned of Lotz's scheme, Shopify processed many of his takedown notices consistent with the DMCA, removing the allegedly infringing content and assessing strikes to the accused merchants. Based on the notices, Shopify removed dozens of products from its platform, albeit temporarily.

29. After discovering the fraud, Shopify re-enabled the affected product webpages and removed the strikes it issued based on the fraudulent notices.

30. Those efforts cost Shopify tens of thousands of dollars in personnel time and resources. The loss of goodwill that Shopify suffered from penalizing innocent merchants cannot be quantified.

## FIRST CAUSE OF ACTION

Violation of 17 U.S.C. § 512(f)

31. Shopify realleges each and every allegation set forth in paragraphs 1 through 30, inclusive, and incorporates them by reference herein.

32. As the service provider that received Lotz's bogus notifications of alleged infringement, Shopify relied upon Lotz's false misrepresentations, removing or disabling access to the material Lotz falsely claimed to be infringing.

33. Lotz's abusive behavior has caused Shopify to expend substantial sums on its investigation to detect and halt that behavior, and on efforts to ensure that its merchants do not suffer adverse consequences from it.

34. Even if Shopify terminates Lotz's existing fraudulent accounts (and it has already suspended use of those accounts), Lotz's dedicated, long-term deceptive conduct suggests he will

attempt to continue sending fraudulent takedown notices. Injunctive relief preventing future misconduct is necessary to prevent irreparable harm to Shopify in the form of lost customer goodwill. Accordingly, Shopify prays for the relief set forth below.

## **PRAYER FOR RELIEF**

Shopify prays for judgment against Lotz as follows:

a) For an award of compensatory damages in an amount to be proved at trial arising from Lotz's violation of 17 U.S.C. § 512(f);

b) For an award of its costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 512(f);

c) For preliminary and permanent injunctive relief barring Lotz and all those in active concert with him from submitting notices of alleged infringement to Shopify that misrepresent that material on the Shopify service is infringing copyrights held or claimed to be held by Lotz or anyone he claims to represent.

d) For such other, further, and different relief as the Court deems proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Shopify requests a trial by jury.

Dated: December 4, 2023    Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Morris J. Fodeman*
Morris J. Fodeman (N.Y. Bar # 2865905)
Jeremy Auster (N.Y. Bar # 5539101)
(*pro hac vice* application forthcoming)
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: mfodeman@wsgr.com
Email: jauster@wsgr.com

*Counsel for Plaintiff Shopify Inc.*